UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH J. PHELAN,

              Petitioner,

   -vs-

SUPERINTENDENT OF THE GREAT
MEADOW CORRECTIONAL FACILITY

              Respondent.
_____

**DECISION AND ORDER**
**No. 11-cv-06127**

## I. Introduction

*Pro se* Petitioner Kenneth J. Phelan ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking review of a determination by the Collins Correctional Facility on November 11, 2009, following a Tier III disciplinary hearing, imposing a penalty of six months confinement in a Special Housing Unit ("SHU"), and recommending the loss of six months of "good time" credits.

## II. Factual Background and Procedural History

### A. State Prison Disciplinary Proceedings

On October 30, 2009, Petitioner was issued an inmate misbehavior report at Collins Correctional Facility for violating Prison Disciplinary Rule 109.15, which provides that "[a]n inmate shall accept double-cell assignments when such an assignment is directed by facility staff." 7 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 270.2(B)(10)(vi).[1]

---

[1] "Double cell housing" is defined as a "maximum or medium security cell . . . originally designated to accommodate a single inmate that has been equipped

The misbehavior report alleged that when Petitioner was ordered to "secure himself . . . to accept a double-cell assignment," he refused. See Resp't Ex. A (Collins Correctional Facility Inmate Misbehavior Report).

On November 11, 2009, hearing officer Captain S. Eckert presided over a Tier III disciplinary hearing[2] at the Collins Correctional Facility regarding the charge that Petitioner refused to accept a double-cell assignment. See Resp't Exs. B (Waiver of Assistance Form), C (Hr'g Mins.), D (Hr'g Record Sheet). Petitioner was advised of his rights and responsibilities and he stated that he understood them. See Resp't Ex. C at 1. Petitioner waived his right to the assistance of a "tier assistant", which waiver Petitioner confirmed on the hearing record. See Resp't Exs. B, C at 1. Captain Eckert read the October 30, 2009 misbehavior report into the record and Petitioner pleaded not guilty to the charge. See Resp't Ex. C at 1-2.

Captain Eckert heard testimony from Petitioner as well as from Corrections Officer ("C.O.") R. Hagedorn, who had issued the misbehavior report. See Resp't Ex. C. At the conclusion of the hearing, Captain Eckert found Petitioner guilty of refusing to accept

---

to accommodate two inmates . . . ." 7 NYCRR § 1701.2.

[2]   In the New York prison system, three types of disciplinary hearings are conducted. See NYCRR § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. See Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir. 1998); Walker v. Bates, 23 F.3d 652, 654 (2d Cir. 1994).

a double-cell assignment, based on the misbehavior report and the testimony of C.O. Hagedorn. See Resp't Exs. C at 5, E (Hr'g Disposition). Captain Eckert found as follows: "It is stipulated that [Petitioner] did receive a double-cell assignment after this incident. However, the initial orders must be followed without argument. Reasons for this disposition is to impress upon [Petitioner] that all orders regarding double-celling must be followed. The fact that [Petitioner] is currently double-celled mitigates the disposition imposed." Captain Eckert also observed that this was Petitioner's "third guilty disposition for refusing double celling." Captain Eckert imposed a penalty of six months confinement in the SHU, but suspended four of the months so that Petitioner would serve only two months. Captain Eckert also recommended the loss of six months of "good time" credit.[3] See Resp't Ex. C at 5-6.

### B. The Administrative Appeal

Petitioner administratively appealed the results of the disciplinary hearing on the following grounds: (1) that "a mental health assessment should have been done since [Petitioner] [had] a documented disability and [was] on psyche meds"; (2) "Petitioner was

---

[3] "For all inmates serving determinate or indeterminate sentences (other than life sentences) who are not granted parole or reparole, but who nevertheless have performed well within the correctional facilities, good behavior allowances can be used to obtain release under supervision and to demonstrate prior to expiration of the term of the sentence that they can follow acceptable behavior patterns in the community as well as in a correctional facility." 7 NYCRR § 260.1(c). Good behavior allowances "may be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program, and may be withheld, forfeited or canceled in whole or in part for bad behavior, violation of institutional rules of failure to perform properly in the duties or program assigned." N.Y. Correction Law § 803(1)(a).

not allowed to call witnesses" at the hearing; and (3) the "hearing officer was biased." On December 17, 2009, the hearing officer's determination was affirmed. See Resp't Exs. F (Appeal Form), G (NYS DOCS Appeal Decision).

### C. The Article 78 Proceedings

In December 2009, Petitioner challenged his November 11, 2009, Tier III conviction by commencing two separate *pro se* Article 78 proceedings in the Supreme Court, Erie County. In both Article 78 proceedings, Petitioner also challenged the results of unrelated Tier II hearings that are not at issue in the instant proceeding.

In his first Article 78 petition, dated December 16, 2009, and captioned Index No. 2010-1908 ("Case 1908"), Petitioner argued that: (1) he was not allowed to call witnesses; (2) "a mental health assessment was not done"; and (3) he was not provided with "a rule book, required by law."[4]  Resp't Ex. H.

In Petitioner's second Article 78 petition, dated December 23, 2009, and captioned Index No. I-2010-1910 ("Case 1910"), Petitioner argued that: (1) he was denied the right to call witnesses; and (2) a mental health evaluation was not conducted.[5]  See Resp't Ex. K.

---

[4] Petitioner also asserted unrelated claims for alleged procedural violations at a Tier II hearing conducted on November 9, 2009, at which he was convicted of threatening another inmate, in violation of Prison Disciplinary Rule 102.10. See Resp't Ex. H.

[5] Petitioner also asserted an unrelated claim for alleged procedural violations at a Tier II hearing on December 14, 2009, at which he was convicted of, among other things, possessing contraband. See Resp't Ex. K.

On June 1, 2010, the Erie County Supreme Court (Hon. John L. Michalski) issued an order with respect to Case 1910, finding that Petitioner was challenging the findings from "a Tier II disciplinary hearing," and that "[i]nsofar as at least part of that challenge is based upon the sufficiency of the evidence introduced at that hearing, this matter must be transferred to the Appellate Division, pursuant to CPLR 7804(g)." Resp't Ex. N.  That order did not address Petitioner's claims related to the Tier III hearing, or otherwise address the Tier III hearing.  On June 18, 2010, the court notified the parties that the June 1, 2010 order had "mistakenly displayed the index number" for Case 1910.  The court therefore issued an identical order on June 18, 2010 with respect to Case 1908.  The People subsequently served Petitioner with notice of entry of the June 18, 2010 order. See Resp't Exs. O, P.

On June 7, 2010, the Erie County Supreme Court issued an order denying the Article 78 petition in Case 1910. See Resp't Ex. Q.  The order stated that, by way of Case 1910, Petitioner was challenging findings from both Tier II and Tier III disciplinary hearings. Id. The court noted that, "[i]nsofar as Petitioner's challenge to the Tier III hearing has already been addressed in [the court's] decision under Index No. 2010-1908, [the court would] limit [its] decision here solely to the Tier II findings." Id.  The court then found that Petitioner's claims with respect to the Tier II findings were meritless. Id.  In its Memorandum of Law, Respondent asserts that it "has found no record or any other order in Erie County Supreme Court addressing, or disposing of, Petitioner's Tier III claims."  Further, Respondent

-5-

states that "the Appellate Division has no record of any filings with respect to Petitioner's Article 78 proceedings, either by way of a transfer or an appeal from the Supreme Court." Resp't Mem. of Law at 6.[6]

### D. The Habeas Corpus Petition

In the instant habeas petition, Petitioner challenges the findings from the Tier III hearing on November 11, 2009, and seeks habeas relief on the following grounds: (1) he was "not allowed to call" his cellmate, Spencer, as a witness at the hearing, and the "hearing officer refused and did not provide a[n] explanation orally or in writing" for that decision; (2) the prison authorities failed to conduct a mental health evaluation; and (3) Petitioner "was not allowed to review the hearing tape after the hearing." Pet. ¶ 13.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## III. Exhaustion Requirement

It is well-settled that a federal court sitting in habeas review may not consider the merits of a claim unless that claim was fairly presented to the state courts. Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

---

[6] The Court points out that Petitioner does not allege in his habeas petition that he applied to the Appellate Division for relief relating to the denial of his Article 78 proceedings either. See Pet. ¶¶ 10-12. And, in response to the standard-form question asking Petitioner if "[he] [has] a petition or appeal now pending in any court . . . as to the judgment under attack," Petitioner has checked the box "no". See Pet. ¶ 15.

Under New York law, the proper way to challenge the loss of good time credits is the commencement of an Article 78 proceeding and exhaustion of that proceeding in the state courts. See Van Gorder v. Boucaud, No. 08-CV-442(NAM)(DEP), 2008 U.S. Dist. LEXIS 56762, * 3 (N.D.N.Y. Jul. 22, 2008) (citing Scales v. New York State Div. of Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005). Petitioners seeking Article 78 review of a prison's good time credit determination must commence the proceeding "within four months after the determination to be reviewed becomes final and binding upon the petitioner.'" Walton v. New York State Dep't of Corr. Srvcs, 8 N.Y.3d 186 (2007)(quoting N.Y. C.P.L.R. § 217[1]); see also Morales v. Selsky, 288 A.D.2d 805 (3d Dep't 2001) (noting the four-month statute of limitations period applicable to Article 78 petitions). "An administrative determination becomes 'final and binding' when two requirements are met: completeness (finality) of the determination and exhaustion of administrative remedies." Walton, 8 N.Y.3d at 194. As set forth below, all of Petitioner's claims are unexhausted.

**IV.  Analysis of the Petition**

**1.  Petitioner's Claim Regarding the Hearing Tape is Unexhausted But Deemed Exhausted and Procedurally Defaulted**

Petitioner argues that "[he] was not allowed to review the hearing tape after the [Tier III] hearing." Pet. ¶ 13. Because Petitioner raises this claim for the first time in the instant proceeding, it is unexhausted for purposes of federal habeas review. See 28 U.S.C.A. § 2254(b)(1). Nonetheless, as discussed below, because Petitioner no

longer has a state court forum within which to exhaust the claim, the Court deems it exhausted and procedurally defaulted.

Petitioner failed to include this claim in either of his Article 78 petitions filed in state court. See Resp't Exs. H, K. If Petitioner were to return to state court to file another Article 78 proceeding arising from the revocation of his good-time credits at the November 11, 2009 disciplinary hearing, he would be time-barred because the fourth month statute of limitations for doing so has expired. See C.P.L.R. § 217[1]. Because state remedies are no longer available to Petitioner, his claims are deemed exhausted and procedurally defaulted. See Bossett v Walker, 41 F.3d 825, 828 (2d Cir. 1994); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

Despite the procedural default, this Court may review the merits of Petitioner's claim if he can show "cause" for his failure to raise this claim in the state courts and "actual prejudice" resulting therefrom, or, that failure to review the claim will result in a "fundamental miscarriage of justice." See Murray v. Carrier, 477 U.S. 478, 485, 496 (1986); see also Schlup v. Delo, 513 U.S. 298, 316 (1995) (introduction of new evidence of innocence is essential to establish a "fundamental miscarriage of justice" to allow a federal court to reach the merits of a barred habeas claim). Petitioner has not alleged cause and prejudice to overcome the default. Further, Petitioner has not proffered new evidence of his innocence or otherwise attempted to avail himself of the miscarriage of justice exception. Accordingly, Petitioner's claim related to the hearing tapes is

unexhausted but deemed exhausted and procedurally defaulted from habeas review. The claim is dismissed.

**2.   Petitioner's Remaining Claims Are Unexhausted and Meritless**

Petitioner's remaining claims appear to be unexhausted. Admittedly, the orders issued by the Erie County Supreme Court with respect to Petitioner's Article 78 petitions are confusing and, in particular, appear to have mistakenly identified that Petitioner's Tier III claims were addressed in Case 1908. See Resp't Ex. Q. In any event, exhaustion requires that a habeas petitioner present his claims to the "highest state court from which a decision can be had." Daye, 696 F.2d at 190. In this case, Petitioner failed to apply to the Appellate Division for relief relating to the denial of his Article 78 petitions. To this extent, the remaining claims are unexhausted.

Petitioner's failure to exhaust his remaining claims, however, is not fatal to the Court's disposition of them on the merits. Because the Court finds the claims to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.[7] See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

---

[7]

The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

**A.   To the Extent Petitioner Challenges the Hearing Court's Imposition of SHU Confinement, Rather than Loss of Good Time Credits, his Claims are Not Cognizable**

To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. See 28 U.S.C. § 2254 (a). Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006). Thus, to the extent, if any, Petitioner challenges the hearing court's imposition of SHU confinement in the instant proceeding, rather than the loss of good time credits, his claims are not cognizable on federal habeas review. Accord e.g., Stallone v. Fischer, No. 10-CV-0615(MAT), 2011 U.S. Dist. LEXIS 121884, *17 (W.D.N.Y. Oct. 21, 2011) (finding Petitioner's claim challenging imposition of confinement in special housing unit not cognizable on federal habeas review because said claim challenged change in conditions of Petitioner's confinement rather that duration of his confinement); Gonzalez v. Lempke, 09-CV-6423-CJS, 2010 U.S. Dist. LEXIS 4380, *3, n.1 (W.D.N.Y. Jan. 20, 2010) ("Petitioner raises three other grounds, but all concern conditions of confinement, thus, are not cognizable under 28 U.S.C. § 2254.") (citing Preiser, 411 U.S. at 485); Welch v. Mukasey, 589 F. Supp. 2d 178, 183 n.3 (N.D.N.Y. 2008) ("Welch also alleges that he is being illegally confined in the Special Housing Unit . . . . [That] claim[], to the extent [it] challenge[s] conditions of confinement, [is] not cognizable on habeas review).

**B.   Petitioner's Claim that the Hearing Officer Failed to Order a Mental Health Assessment is Not Cognizable**

Petitioner claims that the hearing officer failed to order a mental health assessment "in violation of 7 NYCC Ch. 5 and DOCS directives." Pet. ¶ 13. This claim, which alleges violations of state law, is not cognizable by this Court on federal habeas review. See Estelle v. McGuire, 502 US 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); see also Lebron v. Artus, No. 06-CV-0532(VEB), 2008 U.S. Dist. LEXIS 1666, *48-49 (W.D.N.Y. Jan. 9, 2008) ("Petitioner has overlooked the well-settled principle that the 'failure to follow a [NYS] DOCS Directive or prison regulation does not give rise to a federal constitutional claim.'" (citing Rivera v. Wohlrab, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002)).

**C.   Petitioner was Afforded Procedural Due Process at the Tier III Hearing on November 11, 2009**

"It is well established the loss of good time credit as punishment for prison disciplinary offenses implicates a liberty interest protected by the Fourteenth Amendment." Homen v. Hasty, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (citing Wolff v. McDonell, 418 U.S. 539, 558 (1974)).

In Wolff, the Supreme Court ruled that a disciplinary hearing that results in the revocation of a prisoner's good time credit satisfies the due process requirements of the Fourteenth Amendment if: (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and

detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals; (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision. Wolff, 418 U.S. at 563-67.

In this case, Petitioner received all of the process due at his disciplinary hearing. Petitioner received written notice of the charge against him on November 2, 2009 (nine days before the hearing date), and chose to waive assistance related to the hearing. See Resp't Exs. B; C at 1. On November 11, 2009, hearing officer Captain Eckert conducted a Tier III hearing, at the start of which Petitioner was informed of his rights and obligations, including his right to call witnesses and to make objections and arguments in his defense. Petitioner stated that he understood these rights and obligations. See Resp't Ex. C at 1. At the hearing, Petitioner pleaded not guilty and testified that accepted inmate "Spence" as his cell-mate on the date of the incident. Id. at 2. Captain Eckert explained to Petitioner that "the log book does in fact . . . state that you bunked with inmate Spence . . . . [H]owever, that doesn't explain [the] [instant] ticket." Id. at 3. C.O. Hagedorn then testified that, on the date of the incident alleged in the misbehavior report, inmate Carsidio was brought to Petitioner's cell and Petitioner refused to accept him. Id. at 4.

When Captain Eckert asked Petitioner if he remembered refusing that particular inmate, Petitioner responded in the negative. Id. At the close of the hearing, Captain Eckert found Petitioner guilty of refusing double-celling in violation of Prison Disciplinary Rule 109.15 and provided Petitioner with a written disposition, including a statement describing the evidence relied upon and the reasons for his decision. See Resp't Exs. C, E.

Nonetheless, Petitioner claims that he was deprived of procedural due process insofar as he was "not allowed to call" his cell-mate, "Spence", as a witness at the hearing, and that the "hearing officer refused and did not provide a[n] explanation orally or in writing." Pet. ¶ 13. An inmate's right to call witnesses is not the same as a defendant's in a criminal trial, but rather is qualified by the circumstances of prison life. Wolff, 418 U.S. at 566-67. The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case. Id. In this case, "Spence's" testimony was not necessary because Captain Eckert stipulated as to the veracity of that individual's testimony. See Resp't Ex. C at 3-5. On the record, Captain Eckert explained to Petitioner that "the log book does in fact . . . state that you had bunked with inmate Spence, okay?" In response, Petitioner stated, "okay." Id. at 3. Subsequently, Captain Eckert reiterated, "[o]kay, again, I'll stipulate to the fact that [Petitioner] did accept Spence as . . . a Bunkie."

Id. at 5.  Notably, after Captain Eckert set forth this stipulation on the record, Petitioner did not again request to call "Spence" as a witness or otherwise contest Captain Eckert's ruling.  Id.  In delivering his oral decision at the close of the hearing, Captain Eckert made reference to the stipulation, explicitly stating, "[i]t is stipulated that [Petitioner] did receive a double-cell assignment after this incident."  Id. at 5.  This stipulation was also referenced in Captain Eckert's written decision finding Petitioner guilty of refusing double-celling.  See Resp't Ex. E.  Thus, Petitioner's claim that he was denied procedural due process is meritless and is therefore dismissed.

**V.   Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to

-15-

proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                      S/Michael A. Telesca

                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

DATED:    April 9, 2012
            Rochester, New York